THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

RECEIVED
JAN 2 6 2005
TERESA L. DEPPNER, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia

ENTAC, INC., :
:
    Plaintiff, :
:
vs. : CIVIL ACTION NO. 2: 05-CV-0054
:
FREEDOM INDUSTRIES, INC., et al., :
:
    Defendants. :

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

Defendants, Freedom Industries, Inc., William E. Tis, Indigo Astoria, LLC, Dennis P. Farrell, Dperfect, LLC, Charles E. Herzing and Barbara J. Herzing, Useful Solutions, Inc. and Guy Dana Fluty (collectively, the "Moving Defendants"), by and through their undersigned counsel, hereby file this memorandum of law in support of their motion to dismiss pursuant to Rule 12(b)(1), (3) and (6) of the Federal Rules of Civil Procedure for lack of jurisdiction and improper venue, or in the alternative, failure to state a claim upon which relief can be granted with regard to Count I of Plaintiff's Complaint ("Motion to Dismiss"). For the reasons set forth herein, this action should be dismissed in whole or in part.

### INTRODUCTORY STATEMENT

Plaintiff Entac, Inc. ("Plaintiff" or "Entac") attempts in this action to bind the officers and directors and employees of Accretion Technologies, Inc. ("Accretion"), who itself is not named as a defendant herein, to a royalty agreement which was entered into by and between Plaintiff and Accretion but, in doing so, blatantly disregards the express mandatory arbitration provision contained in the very document they attempt to enforce.

{J0869753}

Even assuming that Plaintiff is somehow entitled to secure equitable, injunctive and monetary relief from these individuals for any alleged conduct stemming from this royalty agreement despite their not being parties to the same (an assumption the Moving Defendants deny), Plaintiff cannot rely upon certain terms of this agreement and blatantly disregard other terms. Plaintiff cannot have it both ways.

Because the arbitration provision contained in this agreement is mandatory, covers the claims pursued by Plaintiff in the Complaint, and limits the venue of any such arbitration solely to the Commonwealth of Pennsylvania, this action should be dismissed in its entirety. In any event, the Moving Defendants assert alternatively that Plaintiff may not maintain claims of breach of covenants of the Royalty Agreement because the Moving Defendants are not parties to the Royalty Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about December 21, 2004, Plaintiff filed a Complaint in the Circuit Court of Kanawha County, West Virginia against the Moving Defendants, as well as Ordinary Chemical Co. of West Virginia, LLC, Larry Hyatt, South-Way, Inc. and Carl L. Kennedy, II. (A true and correct copy of the Complaint is attached to the Motion to Dismiss as Exhibit A). In the Complaint, Plaintiff asserts claims of breach of covenants not to compete, tortious interference with contractual relations, civil conspiracy, unfair competition and unjust enrichment and seeks equitable and injunctive relief and monetary damages for sums allegedly due it under the Royalty Agreement between Plaintiff and Accretion. (Compl. ¶1.)

On January 19, 2005, the Moving Defendants, with the consent of all of the named defendants, timely removed the instant action to this Court based on complete diversity pursuant to 28 U.S.C. §§ 1441 and 1332(a) (Docket #1). Plaintiff is a Florida corporation with

2

its principal place of business located in Parsonsfield, Maine. (Compl. ¶2.) All of the named Defendants are citizens of the Commonwealth of Pennsylvania, the Commonwealth of Kentucky or the State of West Virginia. (Compl. ¶¶3-14.)

The Complaint essentially alleges that Entac has not been paid in full the total amount purportedly due it from Accretion pursuant to the terms of the Royalty Agreement which was entered into by and between Plaintiff and Accretion on or about April 15, 2000 (the "Royalty Agreement"). In the Royalty Agreement, Plaintiff agreed to allow Accretion to utilize its tall oil pitch emulsions (the "Entac Emulsions") in Accretion's development, manufacture and sale of chemical change agents for synthetic fuel binders in exchange for certain royalty payments. (Compl. ¶22.) The gravamen of Plaintiff's Complaint is that it was not properly compensated by Accretion for royalties allegedly due under the Royalty Agreement. Interestingly, however, Plaintiff failed to name Accretion in this action.[1] Rather, herein, Plaintiff instituted claims of breach of covenants, tortious interference with contractual relations, civil conspiracy, unfair competition and unjust enrichment against the Moving Defendants, who are not signatories to the Royalty Agreement, by alleging solely that they are members, employees or fiduciaries of Accretion.

## CHOICE OF LAW

As expressly asserted in the Complaint itself, each of Plaintiff's claims herein arise out of the Royalty Agreement.[2] Paragraph 23 of that Agreement entitled "Governing Law"

---

[1] Instead, in adhering to the very provision of the Royalty Agreement which it seeks to thwart in this action, Plaintiff filed a Demand for Arbitration against Accretion with the American Arbitration Association on December 22, 2004. (A copy of the Arbitration Demand is attached to the Motion to Dismiss as Exhibit B).

[2] *See, e.g.,* Compl. at p. 1-2 (stating that [t]his is a civil action for monetary damages, punitive damages, an accounting and preliminary and permanent injunctive relief arising out of Defendants' unlawful scheme to circumvent or avoid the payment to Entac of certain royalty payments otherwise due **under a**

3

contains a choice of law provision that specifically states that "[t]his Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania." (Royalty Agr. ¶23.) Therefore, for any claims or disputes arising under the Royalty Agreement, the substantive law of Pennsylvania must be applied.

## ARGUMENT

A.     **The Complaint Should Be Dismissed Pursuant To Rule 12(b)(3) Because The Plaintiff's Claims Are Subject To A Valid And Enforceable Forum Selection Clause Designating Venue For These Claims In Arbitration.**

The Royalty Agreement, upon which Plaintiff predicates its entire Complaint, contains an arbitration requirement for ". . . any controversy, claim or other dispute arising out of or relating to the subject matter hereof". (Royalty Agr., ¶24.) Because Plaintiff has predicated this entire matter on the Royalty Agreement, by the very terms of the agreement it seeks to enforce, the sole venue for this dispute is the American Arbitration Association.

Challenges to the propriety of a plaintiff's chosen venue are raised by moving to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure. *See Jensen v. Klayman*, 2004 U.S. App. LEXIS 24255 (4th Cir. 2004) (affirming the district court's decision to dismiss the complaint because the plaintiff's claims were covered by an agreement to arbitrate in Florida); *Nizam's Institute of Medical Sciences v. Exchange Technologies*, 1994 U.S. App. LEXIS 16552 (4th Cir. 1994) (upholding the district court's dismissal pursuant to Rule 12(b)(3) because of the existence of a valid forum selection clause.)[3]

---

Royalty Agreement entered into between Entac and a third party, Accretion Technologies, LLC . . . .").

[3] Although the Moving Defendants believe that this motion is properly raised as a 12(b)(3) motion, the Moving Defendants nonetheless recognize that there is some disagreement among the district courts in this circuit as to whether it should more properly be raised pursuant to 12(b)(1) and/or 12(b)(6). Accordingly, the Moving Defendants defer to this Court's preference regarding the same as cases indicate that the choice is primarily academic and not a fatal pleading error to the motion itself. *See Mylan Pharmaceuticals, Inc. v. American Safety Razor*, 265 F,Supp. 2d 635, 638 (N.D. W.Va. 2002) (noting that

Generally, the party challenging the venue has the burden of proving that the venue is improper. *Myers v. American Dental Ass'n*, 695 F.2d 716 (3d Cir.1982) (*cert. denied*, 462 U.S. 1106 (1983) (holding that venue is an affirmative defense so the defendant has the burden of proof)); *see also In re Peach Tree Lanes Assocs. Ltd.*, 150 F.3d 788 (7th Cir. 1998) (stating that party challenging venue bears the burden of establishing by preponderance of the evidence that venue chosen by the plaintiff was improper).

In Pennsylvania, agreements to arbitrate, like any other contract provision, are specifically enforceable. The Supreme Court of Pennsylvania expressly recognized the same in *Mendelson v. Shrager*, 248 A.2d 234 (Pa. 1968), noting as follows:

> Settlement of disputes by arbitration are no longer deemed contrary to public policy. In fact, our statutes encourage arbitration and with our dockets crowded and in some jurisdictions congested arbitration is favored by the courts. Contracts that provide for arbitration are valid, enforceable and irrevocable, save upon such grounds as exist in law or in equity for the revocation of any other type of contract.

In *Chester School Authority v. Aberthaw Const.*, 333 A.2d 758 (Pa. 1975), the Pennsylvania Supreme Court characterized a contractual agreement to arbitrate as "an election by the parties to select another forum to resolve disputes." *Id.* at 761.

A court's decision whether to enforce an arbitration agreement is governed by two basic rules: (1) arbitration agreements are to be strictly construed and . . such agreements should not be extended by implication and (2) when the parties agree to arbitration in a clear and unmistakable manner, every reasonable effort will be made to favor such agreements. *See, e.g., Emmaus Municipal Authority v. Eltz*, 204 A.2d 926 (Pa. 1964); *Hassler v. Columbia Gas Transmission Corp.*, 464 A.2d 1354 (Pa. Super. Ct. 1983). When seeking to enforce or preclude an arbitration provision, judicial inquiry is limited to determining (1) whether a valid agreement

---

"academics continue to debate the proper vehicle for effectuating forum selection clauses") (citations omitted).

5

to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration provision. *Midomo Co., Inc. v. Presbyterian Housing Development Co.*, 739 A.2d 180 (Pa. Super. Ct. 1999). If a valid arbitration agreement exists between the parties and the claim is within the scope of the agreement, the controversy must be submitted to arbitration. *Messa v. State Farm Ins. Co.*, 641 A.2d 1167, 1170 (Pa. Super. Ct. 1994). Within this purview, it is clear that the only proper venue for the instant case is arbitration.

In the instant matter, Plaintiff is precluded from denying both the existence of the agreement and the fact that its claims are within the scope of the provision. Plaintiff predicates its entire Complaint upon the Royalty Agreement and, as such, is bound by the terms of the agreement upon which it bases its claims for relief.

The arbitration provision of the Royalty Agreement as set forth in Paragraph 24 (the "Arbitration Provision") provides, in pertinent part, as follows:

> Arbitration. **Any controversy, claim or other dispute arising out of this Agreement or relating to the subject matter hereof shall be decided by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association unless the parties agree otherwise.** This Agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrator shall be final and binding on all parties and judgment may be entered thereon in any court having jurisdiction thereof. The arbitration shall be held at a mutually agreeable site or at a reasonable site selected by the alleged aggrieved party. Notwithstanding the foregoing, the Wrongdoer hereby (a) submit to personal jurisdiction in the State of Pennsylvania for the equitable enforcement of this Agreement or any claim(s) for injunctive relief hereunder, and (b) hereby waives any and all personal rights under the laws of any state of the United States or any foreign jurisdiction to object to such jurisdiction.

(Royalty Agr. ¶24) (emphasis added).

Plaintiff's conduct is an admission as to the existence and validity of the Arbitration Provision. On December 21, 2004, contemporaneous to filing the instant action, Plaintiff filed a demand for arbitration against Accretion with the American Arbitration Association in Pittsburgh, Pennsylvania, citing this same provision. (Ex. B).

Further, based upon the allegations in the Complaint, it is hard to imagine that Plaintiff could deny that its claims here do not fall within the broad scope of the Arbitration Provision. Despite Plaintiff's careful attempts to disguise its breach of contract claims as tort claims,[4] a review of the Complaint reveals all of the claims arise from or are related to the Royalty Agreement by and between Plaintiff and Accretion. In fact, the opening paragraph of the Complaint so states, in pertinent part:

> This is a civil action for monetary damages, punitive damages, an accounting and preliminary and injunctive relief arising out of Defendants' unlawful schemes to circumvent or avoid the payment of certain royalty payments otherwise due ***under a Royalty Agreement*** entered into between Entac and a Third party, Accretion Technologies, LLC. Defendants, through their exercise and control over Accretion, have unlawful diverted corporate opportunities from Accretion for their own benefit and enrichment ***in order to diminish or avoid entirely Entac's royalty payments***.

(Compl.) (emphasis added).

The Complaint relies solely upon the Royalty Agreement as the source of the duties allegedly owed to Plaintiff and the resultant damages purportedly suffered. The Complaint repeatedly refers to the Moving Defendant's obligations under the Royalty Agreement. (*See, e.g.,* Compl ¶¶25, 26, 38, 39 and 46). For example, in Count I, Plaintiff alleges that certain of the Moving Defendants (individuals, Tis, Herzing, Fluty and Farrell) were "bound to comply with all of the covenants not to compete or interfere. . . as provided in the

---

[4] Presumably, Plaintiff drafted its claims in order to attempt to avoid the application of the Arbitration Provision.

Royalty Agreement . . . [citing paragraph 8 of the Royalty Agreement]" and, further, that those defendants "have breached the covenants not to compete or interfere". (Compl. ¶¶38, 39.)

Each and every count in the Complaint seeks damages for the loss of "substantial royalty payments" or "substantial royalty payments as would have been otherwise entitled to receive under the Royalty Agreement." (Compl. ¶¶42, 49, 54, 58 and 62). The Plaintiff's reliance upon the Royalty Agreement in its Complaint is a tacit admission that its claims arise from or relate to the Royalty Agreement and, therefore, fall within the scope of the Arbitration Provision. Indeed, but for the Royalty Agreement, Plaintiff would have no claims against the Moving Defendants. Thus, it is clear that the instant matter is a ". . . controversy, claim, or other dispute" arising out of the Royalty Agreement "or relating to the subject matter" of that Agreement. Accordingly, Plaintiff cannot not now avoid the Arbitration Provision of the very agreement under which it claims relief.

Based upon the forgoing, the Moving Defendants request that this Court enforce the Arbitration Provision of the Royalty Agreement and dismiss the instant action in its entirety for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.[5]

**B.      The Complaint Should Be Dismissed Pursuant To Rule 12(b)(1) Because Plaintiff's Claims Are Subject To A Jurisdiction Selection Clause.**

---

[5] In accordance with the Arbitration Provision, the Moving Defendants will be initiating an AAA arbitration against Plaintiff which addresses the many counterclaims which the Moving Defendants have against Plaintiff relating to the Royalty Agreement, including, without limitation, claims of fraudulent and/or negligent misrepresentation and/or constructive fraud arising out of representations made by Entac regarding the Entac Emulsion; claims of breach of contract, as well as breach of express and implied warranties of the Royalty Agreement and any amendments thereto. The Moving Defendants will also asserts claims of rescission of the Royalty Agreement, any amendments thereto, as well as any agreements arising out of that agreement, including but not limited to any confidentiality agreements and/or covenants not to compete and/or any assignments of patents. The Moving Defendants contend that these are null and void and/or unenforceable because they were procured and pursued as a result of fraud, intentional misrepresentation, negligent misrepresentation, constructive fraud, proffered consideration that either never existed or was not delivered by Entac and/or detrimental reliance.

In addition to the express selection of venue, the Arbitration Provision specifies that jurisdiction for arbitration lies solely within the Commonwealth of Pennsylvania:

> ... The arbitration shall be held at a mutually agreeable site or at a reasonable site selected by the alleged aggrieved party. Notwithstanding the foregoing, the Wrongdoer hereby (a) submit to personal jurisdiction in the State of Pennsylvania for the equitable enforcement of this Agreement or any claim(s) for injunctive relief hereunder, and (b) hereby waives any and all personal rights under the laws of any state of the United States or any foreign jurisdiction to object to such jurisdiction.

(Royalty Agr. ¶24).

An agreement to arbitrate in a particular place "is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). Since its decision in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), "the Supreme Court has consistently accorded choice of forum and choice of law provisions presumptive validity." *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (citations omitted); *see also Jensen Klayman*, 2004 U.S. App. LEXIS 24255 (4th Cir. 2004) (affirming the district court's dismissal under 12(b)(1) because plaintiff's claims were covered by an agreement to arbitrate in Florida).

Accordingly, the Moving Defendants ask this Court to enforce the Arbitration Provision of the Royalty Agreement which forms the basis of Plaintiff's Complaint by dismissing, without prejudice, Plaintiff's entire Complaint pursuant to Rule 12(b)(1) and (3).

**C.   In The Alternative, Count I Of The Complaint Should Nonetheless Be Dismissed Pursuant To Rule 12(b)(6) For Failure To State A Claim Upon Which Relief May Be Granted.**

A motion under Rule 12(b)(6) tests the formal sufficiency of the statement of the claim for relief. *Henegar v. Sears, Roebuck & Co.*, 965 F. Supp. 833 (N.D. W.Va. 1997). Allegations in the Complaint must be taken as true on a motion to dismiss. *Ridgeway Coal Co.*

*v. FMC Corp.*, 616 F. Supp. 404 (S.D. W.Va. 1985). A dismissal is properly granted under Rule 12 (b)(6) in situations where the allegations raised in the complaint clearly demonstrate that the plaintiff does not have a claim and demonstrate no set of facts that would support its claim. *Booth v. Old National Bank*, 900 F. Supp. 836 N.D. (W.Va. 1995).

With this standard in mind, the Moving Defendants assert, in the alternative, that Plaintiff nonetheless cannot maintain a cause of action against the Moving Defendants for any alleged breach of covenants contained in the Royalty Agreement because the Moving Defendants are not signatories to that Agreement. Furthermore, even if this Court were to find that Moving Defendants are bound by such covenants despite not being signatories to the same, Count I should nonetheless be dismissed because the covenants relied upon are invalid and illegal as written and may not be enforced at law.

1. *The Moving Defendants cannot be found in breach of the Royalty Agreement if they were not parties to the same.*

The Complaint asserts that the Moving Defendants, as members, employees or fiduciaries of Accretion, were obligated to sign and were subject to "various confidentiality, non-disclosure, and covenants not to compete or interfere provisions contained within the Royalty Agreement." (Compl. ¶¶25, 26.) Count I purports to state a cause of action for the breach of the covenant not to compete contained in Paragraph 16 of the Royalty Agreement. (Compl. ¶38.) Specifically, Plaintiff alleges that the Moving Defendants, by virtue of their relationship with Accretion, are "bound to comply with all covenants not to compete or interfere" contained the terms of the Royalty Agreement. (Compl. ¶38.)

While Plaintiff has alleged the Moving Defendants were "aware" and "subject to covenants not to compete," Plaintiff stopped short of saying that the Moving Defendants were

actual parties to the Royalty Agreement, as indeed they cannot allege.[6] (Compl. ¶26). Plaintiff alleges that the sole parties to the Royalty Agreement are Entac and Accretion. Further, while Plaintiff alleges that certain of the Moving Defendants were required to sign covenants not to compete pursuant to Paragraph 16 of the Royalty Agreement, Plaintiff has not alleged that such covenants were ever executed by the Moving Defendants, nor did Plaintiff produce or attach any covenants not to compete signed by the Moving Defendants.[7]

Accordingly, should this Court decide not to enforce the Arbitration Provision and to dismiss this case in its entirety, the Moving Defendants submit, in the alternative, that because they are not parties to the Royalty Agreement, Plaintiff cannot sue them on any provisions of that contract. "At common law no one could maintain an action upon a contract to which he was not a party. This rule is well established in this country, and is recognized by both the state and federal courts." *Howes v. Scott*, 73 A. 186, 187 (Pa. 1909).

   2.   *The Plaintiff may not maintain a cause of action for breach of covenants not to compete which are invalid and unenforceable under the law.*

Additionally, the Moving Defendants submit that Plaintiff may not maintain claims for the enforcement of the confidentiality provision contained in the Royalty Agreement because that provision is invalid and unenforceable as written, regardless of the choice of law applied.

The Pennsylvania Supreme Court has held that employment contracts containing general covenants by an employee not to compete after the termination of his employment are

---

[6] Plaintiff also alleges that the Moving Defendants had "knowledge of" and were "subject to" confidentiality and non-disclosure provisions found in the Royalty Agreement, but Plaintiff asserts no claims for the breach of these covenants. (Compl. ¶¶26, 46). Plaintiff's claim for breach of covenants in Count I is inexplicably limited to an alleged breach of the covenant not to compete as set forth in the Royalty Agreement.

[7] The exact language of the covenant not to compete found in the Royalty Agreement is cited on page 11 above.

11

*prima facie* enforceable if they are reasonably limited as to duration of time and geographical extent. *See, e.g., Morgan's Home Equipment v. Martucci*, 136 A.2d 838 (Pa. 1957) (citing *Seligman & Latz v. Vernillo*, 114 A.2d 672 (Pa. 1955)); *Plunkett Chemical Co. v. Reeve*, 95 A.2d 925 (Pa. 1953). General covenants are reasonably limited if they are "within such territory and during such time as may be reasonably necessary for the protection of the employer . . . without imposing undue hardship on the employee . . . ." *Morgan's Home Equipment v. Martucci*, 136 A.2d 838 (Pa. 1957) (citing Restatement, Contracts, § 516(f) (1932)). Pennsylvania law permits equitable enforcement of employee covenants not to compete only so far as reasonably necessary for the protection of the employer. *Bettinger v. Carl Berke Associates, Inc.*, 314 A.2d 296 (Pa. 1974); *Reading Aviation Service Co. v. Berolet*, 311 A.2d 628 (Pa. 1973).

Similarly, West Virginia will uphold an anticompetitive covenant if supported by consideration, ancillary to a lawful contract and is both reasonable and consistent with public interest. *Reddy v. Community Health Foundation*, 298 S.E.2d 906 (W. Va. 1982). The burden of producing evidence that a restrictive covenant is reasonable is upon the party seeking to enforce the covenant. *Weaver v. Ritchie*, 478 S.E.2d 363 (W. Va. 1996).

The court in *Reddy* was asked to determine if a restrictive covenant of three years and 30 miles in a physician's employment agreement was "reasonable." *See Reddy*, 298 S.E.2d at 906. While the court did not find the covenant at issue was invalid on its face, the court's analysis is nonetheless dispositive here. In reaching its conclusion, the *Reddy* court established the following test as to the reasonableness of the terms of a restrictive covenant: "a restrictive covenant is reasonable only if it (1) is no greater than required for the protection of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *Id.* at 911.

Turning to the instant case, the non-compete covenant contained in Paragraph 16 of the Royalty Agreement stipulates as follows:

> Covenants Not to Compete or Interfere. ACCRETION and ENTAC, INC. agree that, other than as specifically provided for herein, both parties will not, directly or indirectly, during the term of this Agreement, engage in the purchase, use, manufacture, sale, application, or marketing of any product, regardless of its composition, for use as binders for synthetic fuels.
>
> ACCRETION agrees that, other than as specifically provided for herein, it will not, directly or indirectly, during the term of this Agreement and for a period of five (5) years after the termination of this Agreement, engage in the purchase, use, manufacture, sale application, or marketing of any tall oil pitch based product, for use alone or in combination with other products for the following purposes: dust control, stockpile sealing, road applications, binding tallings, landfill sealing, pond sealing, roofing, sealing, binding, agglomeration, palletizing, briquetting, leachate prevention, soil remediation, block building cement, soil stabilization, stockpile freeze control, hydroseeding, synthetic fuel binding, rail car and truck sealing...

(Royalty Agr. ¶16.)

Pursuant to the authority cited above, the non-compete covenants of the Royalty Agreement blatantly fail the analysis established by the *Reddy* court. Initially, the non-compete covenant at issue contains no limitation whatsoever as to geographic distance. Additionally, there is no definite or meaningful limitation on the duration of time. The only limiting element to this provision is that the employees of Accretion shall be prohibited for "a period of five (5) years after the termination of this Agreement." According to the terms of the Agreement, it will expire on December 31, 2015. Thus, anyone who is bound by this Agreement would be prohibited from working in this field anywhere in the world for at least twenty (20) years, unless the Agreement is renewed, making the actual duration of time infinite.

On its face, the covenant not to compete is void under the law of either Pennsylvania or West Virginia. To state that is overly board is an understatement. It is outrageously and, indeed, illegally broad. It imposes a tremendous hardship on any persons

bound thereunder, in that it would force a person to retire from working in this field for nearly all of his or her working lifetime. Such a result is not the intent of the law in the enforcement of restrictive covenants. Thus, Plaintiff may not maintain a claim for the enforcement of the provision on its terms, making dismissal of Count I proper under Rule 12(b)(6).

Accordingly, the Moving Defendants respectfully submit that Plaintiff may not maintain the cause of action alleged in Count I of the Complaint and respectfully request that the Court to dismiss the same with prejudice.

## **CONCLUSION**

The choices before this Court in ruling on the Moving Defendants' Motion to Dismiss are simple: either Plaintiffs are bound by the terms of the Royalty Agreement including, but not limited to, the covenant not to compete, or they are not. If Plaintiffs are so bound and the covenants are enforceable against them, that is, covenants which arise from the Royalty Agreement, then this matter must proceed to arbitration. If Plaintiffs are not bound by the terms of the Royalty Agreement, they cannot be bound, then, by the covenant not to compete contained in that very agreement and thus, Count I must be dismissed.[8]

---

[8] To the extent that each of the other counts of the Complaint arise out of an obligation allegedly created by virtue of the covenant not to compete, such counts will also be subject to dismissal.

WHEREFORE, for the reasons set forth in the Motion to Dismiss and the foregoing, the Moving Defendants respectfully request that this Court enforce the Arbitration Provision of the Royalty Agreement and dismiss, without prejudice, Plaintiff's entire Complaint pursuant to Rule 12(b)(1) and (3). In the alternative, the Moving Defendants request that this Court dismiss Count I of the Complaint with prejudice for failure to state a claim upon which relief can be granted.

Respectfully submitted,

*Edward D. McDevitt*

Edward D. McDevitt, Esquire
West Virginia ID No. 2437
Bowles Rice McDavid Graff & Love LLP
P.O. Box 1386
Charleston, WV 25325-1386
Telephone: 304-347-1711

April Morgan Hincy, Esquire
West Virginia ID No. 8831
Eckert Seamans Cherin & Mellott, LLC
2400 Cranberry Square, Second Floor
Morgantown, WV 26508-9209
Telephone: 304-594-1000

Kathleen A. Gallagher
Delia Bouwers Bianchin
Eckert Seamans Cherin & Mellott, LLC
U.S. Steel Tower
600 Grant Street, 44th floor
Pittsburgh, PA 15219

*Counsel for Defendants Freedom Industries, Inc., William E. Tis, Indigo Astoria, LLC, Dennis P. Farrell, Dperfect, LLC, Charles E. Herzing and Barbara J. Herzing, Useful Solutions, Inc. and Guy Dana Fluty*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January, 2005, a copy of the foregoing Motion to Dismiss and Memorandum of Law in Support was mailed, postage prepaid, to:

Joshua I. Barrett, Esquire
Sean P. McGinley, Esquire
Richard S. Han, Esquire
DiTrapano, Barrett & DiPiero, PLLC
604 Virginia Street, East
Charleston, WV 25301
Counsel for Plaintiff

Michael W. Carey, Esquire
John Kessler, Esquire
Carey Scott & Douglas, PLLC
707 Virginia Street, East
Suite 1701
Charleston, WV 25301
Counsel for Defendants, Carl L. Kennedy, II and
Ordinary Chemical Co. of West Virginia

J. Robert Leslie, Esquire
Tyree, Embree & Associates, PLLC
3058 Mount Vernon Road
Hurricane, WV 25526
Counsel for Defendants, South-Way, Inc. and
Larry A. Hyatt

*Edward D. McDevitt* (signature)
Edward D. McDevitt
Counsel for Defendants, Freedom Industries, Inc., William E. Tis, Indigo Astoria, LLC, Dennis P. Farrell, Dperfect, LLC, Charles E. Herzing and Barbara J. Herzing, Useful Solutions, Inc. and Guy Dana Fluty

1353580.1